**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| VB CONSTRUCTION, INC.; and FIRST CHOICE CONCRETE, LLC;<br><br>     Plaintiffs,<br><br>v.<br><br>ARGOS USA CORP.; ARGOS CEMENT, LLC; ARGOS READY MIX, L.L.C; ELITE CONCRETE, INC.; EVANS CONCRETE, LLC; COASTAL CONCRETE SOUTHEAST II, LLC; and THOMAS CONCRETE, INC.<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>CIVIL ACTION FILE NUMBER<br><br>1:16-cv-04229-scj<br><br>**JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED COMPLAINT FOR</u>

## <u>FEDERAL ANTITRUST VIOLATIONS, INDEMNIFICATION, TORTIOUS</u>

## <u>INTERFERENCE WITH BUSINESS RELATIONS AND DEFAMATION</u>

**COME NOW** VB CONSTRUCTION, INC., and FIRST CHOICE CONCRETE, LLC, Plaintiffs, and files this, their **First Amended[1] Complaint for Federal Antitrust Violations, Indemnification, Tortious Interference with Business Relations and Defamation** against ARGOS USA CORP.; ARGOS

---

[1]  Plaintiffs file this amended complaint as a matter of course pursuant to FRCP 15(a)(1)(A).

CEMENT, LLC; ARGOS READY MIX, LLC; ELITE CONCRETE, LLC.; EVANS CONCRETE, LLC; COASTAL CONCRETE SOUTHEAST II, LLC; and THOMAS CONCRETE, INC., removing ELITE CONCRETE, INC. as a named defendant and naming instead ELITE CONCRETE, LLC as defendant, and show this Honorable Court the following:

## INTRODUCTION

Plaintiffs in this action engage in the business of concrete pouring and installation in Chatham County, Georgia; Liberty County, Georgia; Bryan County, Georgia; Effingham County, Georgia; Bulloch County, Georgia; Evans County, Georgia; Long County, Georgia; Wayne County, Georgia; and Bueafort County, South Carolina (hereinafter the "geographical area"). Between January 1, 2011 and June 30, 2016, Plaintiffs purchased approximately 180,000 cubic yards of concrete from Defendants.

Defendant Argos Cement, LLC and Defendant Argos Ready Mix, LLC are wholly owned subsidiaries of Defendant Argos USA Corp. Hereinafter, "Defendant Argos" shall refer collectively to Defendant Argos USA Corp., Defendant Argos Cement, LLC, and Defendant Argos Ready Mix, LLC.

Collectively, Defendants Argos Ready Mix, LLC, Elite Concrete, LLC, Evans

2

Concrete, LLC, Coastal Concrete Southeast II, LLC, and Thomas Concrete, Inc., produce, mix, and supply all of the concrete poured and installed in the geographical area.

The majority of customers of Defendants Argos Ready Mix, LLC, Elite Concrete, LLC, Evans Concrete, LLC, Coastal Concrete Southeast II, LLC, and Thomas Concrete, Inc., are concrete pourers and installers, commercial and residential builders, construction contractors, and real estate developers.

Commencing in 2011 and continuing through the present, in violation of 15 U.S.C. §1, the Sherman Act, Defendants engaged in price fixing, customer allocation, and market allocation schemes.  As a result of Defendants' market allocation, a not insubstantial amount of interstate commerce in the concrete market within the geographical area has been, and continues to be, affected by Defendants' illegal conduct.  Additionally, Defendants' conduct has harmed customers and consumers as well as competition.

Specifically, Defendants allocated all of the customers within the geographical area among themselves.   Thus, unbeknownst to Plaintiffs and other concrete consumers, they were "assigned" by Defendants a specific supplier of concrete.  In furtherance of this scheme, Defendants fixed prices for concrete in such a manner as

3

to chill competition and substantially adversely affect interstate commerce in the geographical area

Currently, Defendant Argos supplies approximately eighty percent of the cement, in the above geographical area.  Cement is the key ingredient of concrete.

In 2011, Defendant Argos purchased the cement and concrete operations and assets of LaFarge, LTD, Defendant Argos' primary competitor within the geographical area, located in the South East United Sates, for the approximate sum of $760 Million Dollars.  In violation of 15 U.S.C. §2, the Sherman Act, Defendant Argos Defendant Argos Cement controls approximately eighty percent of the market share of cement production within the geographical area.  Currently, Holcim, LTD[2] is the only cement competitor of Defendant Argos Cement within the geographical area. Thus, Defendant Argos controls the cement market within the geographical area.

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff VB Construction, Inc. is a Georgia corporation, which engages in the installation of concrete within the geographical area.

---

[2]   Holcim, LTD is a subsidiary of LaFarge Holcim.  Upon Plaintiffs' information and belief, Defendant Argos Cement is actively pursuing the purchase of Holcim, LTD's cement operations within the geographical area.

2.

First Choice Concrete, LLC is a Georgia corporation, which engages in the installation of concrete within the geographical area.

3.

Defendant Argos USA Corp. is a Delaware corporation transacting business within the state of Georgia.  Thus, Defendant Argos USA Corp. is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Argos USA Corp. by and through Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092, its registered agent.

4.

Defendant Argos Cement, LLC is a Delaware corporation transacting business within the state of Georgia.  Defendant Argos Cement, LLC's principal place of business is 3015 Windward Plaza, Alpharetta, Fulton County, Georgia 30005.  Thus, Defendant Argos Cement, LLC is subject to the jurisdiction and venue of this Court. Process may be served upon Defendant Argos Cement, LLC by and through Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092, its registered agent.

5.

Defendant Argos Ready Mix, LLC is a Delaware corporation transacting business within the state of Georgia.  Defendant Argos Ready Mix, LLC's principal place of business is 3015 Windward Plaza, Alpharetta, Fulton County, Georgia 30005. Thus, Defendant Argos Ready Mix, LLC is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Argos Ready Mix, LLC by and through Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092, its registered agent.

6.

Defendant Elite Concrete, LLC is a Georgia Corporation.  Thus, Defendant Elite Concrete, LLC is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Elite Concrete, LLC by and through Troy D. Baird, 5 Creekmarsh Lane, Savannah, Chatham County, Georgia, 31411, its registered agent.

7.

Defendant Evans Concrete, LLC is a Georgia Corporation.  Thus, Defendant Evans Concrete, LLC is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Evans Concrete, LLC by and through Timothy Strickland, 518 E. Smith Street, Claxton, Georgia 30417, its registered agent.

8.

Defendant Coastal Concrete Southeast II, LLC is a Georgia Corporation.  Thus, Coastal Concrete Southeast II, LLC is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Coastal Concrete, by and through Thomas Cullen, 118 Pipemakers Circle, Suite 100, Pooler, Georgia 31322, its registered agent.

9.

Defendant Thomas Concrete, Inc. is a Georgia Corporation.  Thus, Defendant Thomas Concrete, Inc. is subject to the jurisdiction and venue of this Court.  Process may be served upon Defendant Thomas Concrete, Inc. by and through Alan Wessel, 2500 Cumberland Parkway, Suite 21, Atlanta, Georgia 30339, its registered agent.

10.

Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC are alter-egos of one another and operate and hold themselves out as one company called "Argos" (hereinafter, "Defendant Argos").

11.

In regard to Count I through Count V, this Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337, as this action arises under Sections 1 and 2

of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

12.

In regard to Count IV through Count VI, the matter in controversy exceeds the sum of $1,000,000.00.  Further, Plaintiffs are citizens of this state and Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC are citizens of another state.  Thus, this Court has jurisdiction pursuant to 28 U.S.C. §1332(a).

13.

Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC maintain their registered agents and principal offices in this district.  Thus, pursuant to 15 U.S.C. § 22 and NDGA Local Rule §3.1(B)(1)(b), venue is proper in this Court.

**COUNT I**

**VIOLATION OF SECTION 1 OF THE SHERMAN ACT:**

**MARKET ALLOCATION**

14.

Plaintiffs reallege and incorporate Paragraphs 1 through 13 above.

8

15.

Defendants entered into agreements to divide the concrete market within the geographical area among themselves.

16.

Specifically, individual concrete consumers were assigned to a particular Defendant.   Thus, under the agreement, each Defendant sold concrete to its allocated customers at a set minimum price.

17.

Further, each Defendant agreed to sell concrete to customers allocated to other Defendants' customers at an inflated price. Thus, the concrete consumers were discouraged from purchasing concrete from Defendant other than their respective assigned Defendant.  As a result, the concrete consumers within the geographical area are allocated among Defendants, through this unlawful pricing scheme.

18.

During the relevant times, Plaintiffs were assigned to Defendant Elite.

19.

On multiple occasions, Defendant Elite was unable to produce enough concrete to satisfy Plaintiffs' demand.

20.

On such occasions, Plaintiffs were forced to purchase concrete from other Defendants at substantially increased costs.

21.

Moreover, Plaintiffs show other customers purchased concrete from the same Defendants, at prices similar to Plaintiffs' purchase price from Defendant Elite.

22.

Additionally, in an effort to maximize their buying power and reduce costs, Plaintiffs sought to enter output contracts with several Defendants.

23.

Notwithstanding Plaintiffs' considerable market share, each Defendant, other than Defendant Elite, refused to sell concrete to Plaintiffs at the same or lower price as Defendant Elite.

24.

Yet, these same Defendants sold concrete to Plaintiffs' competitors at prices similar to the price Defendant Elite sold concrete to Plaintiffs.

25.

Thus, Defendants' actions demonstrate and reveal a pattern of customer

allocation, in violation of Section 1 of the Sherman Act.

26.

Accordingly, a not insubstantial amount of interstate commerce in the concrete market of the geographical area has been, and continues to be, affected by Defendants' illegal conduct.  Defendants' conduct harmed, and continues to harm, Plaintiffs, together with other concrete customers and consumers.  Further, Defendants' actions unlawfully quash market competition.

27.

As a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiffs have been injured and continue to be injured in their business and property in an amount to be determined at trial, which amount should be trebled pursuant to 15 U.S.C. § 15.

28.

Additionally, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants are restrained and enjoined from continuing their wrongful actions, and Defendants are ordered to provide access to concrete to Plaintiffs, on such terms as are just and reasonable.

## COUNT II

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT:

## PRICE FIXING

### 29.

Plaintiffs reallege and incorporate Paragraphs 1 through 28 above.

### 30.

As stated above, Defendants entered into agreements to raise, fix, or otherwise maintain the price at which concrete is sold, within the geographical area.

### 31.

Defendants established set prices for concrete. Then, in furtherance of their scheme, Defendants allocated customers and consumers among themselves.

### 32.

Thus, Plaintiffs, and all concrete customers and consumers similar to Plaintiffs, were forced to pay the price set by Defendants.

### 33.

Further, concrete prices within the geographical area were, and still are, artificially higher than a competitive market would provide.

34.

Accordingly, a not insubstantial amount of interstate commerce in the concrete market of the geographical area has been, and continues to be, affected by Defendants' illegal conduct.  Defendants' conduct harmed, and continues to harm, Plaintiffs, together with other concrete customers and consumers.   Further, Defendants' actions unlawfully quash market competition.

35.

As a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiffs have been injured and continue to be injured in their business and property in an amount to be determined at trial, which amount should be trebled in accordance with 15 U.S.C. § 15.

36.

Additionally, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants are restrained and enjoined from continuing their wrongful actions and Defendants are ordered to provide access to concrete to Plaintiffs, on such terms as are just and reasonable.

## COUNT III

## VIOLATIONS OF SECTION 2 OF THE SHERMAN ACT:

## MONOPOLIZATION

37.

Plaintiffs reallege and incorporate Paragraphs 1 through 36 above.

38.

In 2011, Defendant Argos purchased the Southeast United States cement and concrete operations and assets of LaFarge, LTD, Defendant Argos' primary competitor within the geographical area, for the approximate sum of $760 Million Dollars.

39.

In violation of 15 U.S.C. §2, the Sherman Act, Defendant Argos controls approximately eighty percent of the market share of cement production within the geographical area.  Cement is the key ingredient of concrete.

40.

Defendant Argos' control over the cement market within the geographical area destroys competition.

41.

Further, as shown above, Defendant Argos colluded with all Defendants to allocate the market of concrete consumers, within the geographical area.

42.

Thus, by controlling the supply of cement and allocating customers among Defendants, Defendant Argos controls the concrete market within the geographical area.

43.

Accordingly, Defendant Argos holds a monopoly over the cement market within the geographical area.  Defendant Argos' conduct harmed, and continues to harm, Plaintiffs, together with other concrete customers and consumers.  Further, Defendants' actions unlawfully eliminate market competition.

44.

As a result of Defendant Argos' violations of Section 2 of the Sherman Act, 15 U.S.C. §2, Plaintiffs have been injured and continue to be injured in their business and property in an amount to be determined at trial, which amount should be trebled in accordance with 15 U.S.C. §15.

45.

Additionally, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendants are restrained and enjoined from continuing their wrongful actions and Defendants are ordered to provide access to concrete to Plaintiffs, on such terms as are just and reasonable.

## COUNT IV

## INDEMNIFICATION AGAINST DEFENDANTS ARGOS USA CORP.;

## ARGOS CEMENT, LLC; ARGOS READY MIX, LLC

46.

Plaintiffs reallege and incorporate Paragraphs 1 through 45 above.

47.

Between April 2013 and September 2013, Defendant Argos sold to Plaintiff VB Construction approximately 8,500 cubic yards of defective concrete.

48.

Further, the defects in the concrete were intentional.

49.

Concrete is primarily composed of cement, sand, aggregate and water.

50.

Additionally, a concrete mix will contain other materials and fillers. Among these other materials frequently added to the mix is "fly ash".

51.

If added in the proper amount to the concrete mixture, fly ash reduces the amount of water required, improves workability, increases cohesiveness, and/or reduces segregation of concrete.

52.

To maximize its benefits, a concrete mixture should contain ratio of no more 10% to 15% fly ash.

53.

The concrete Defendant Argos sold to Plaintiff VB Construction contained between 40% and 50% fly ash.

54.

Plaintiffs show the high fly ash content of the concrete sold to Plaintiff VB Construction by Defendant Argos caused the concrete to deteriorate into dust (hereinafter "dusting").

55.

Plaintiff VB Construction installed the concrete sold by Defendant Argos on no fewer than fifty new construction residential homes[3], with approximately 80% of the concrete being poured into the foundations.

56.

Within months, the defective concrete began "dusting".

57.

Initially, the dusting was most evident in driveways, walkways, and other areas exposed to the elements.

58.

Soon thereafter, the dusting occurred in the foundations of the houses affected by the defective concrete.  Once the foundations started to deteriorate, the "dust" from the defective concrete adversely impacted the air quality of the homes.  Further, as it continues to deteriorate, the concrete threatens the structural integrity of the homes.

59.

Plaintiffs show Defendant Argos intentionally mixed the defective concrete,

---

[3]    In total, Plaintiffs believe Defendant Argos' defective concrete was installed in as many as 1,000 homes.

and it knew the high fly ash content would cause the concrete to deteriorate.

60.

Further, the defects to the concrete sold by Defendant Argos to Plaintiff VB Construction cannot be remedied.  Thus, eventually, the foundations of the infected homes will fail, and the homes will collapse[4].

61.

Additionally, the "dust" caused by the defective concrete infects the air quality of the homes and potentially poses a health risk to the residents and guests of the affected homes.  These health risks may not manifest for several years or even decades into the future.

62.

Plaintiffs, as the installers of the defective concrete, are exposed to future lawsuits filed by homeowners, property owners, residents, and/or guests of houses and buildings affected by the defective concrete.

63.

As shown above, Plaintiffs unknowingly installed the defective concrete, which Defendant Argos produced, mixed and sold.

---

[4]    On May 6, 2016, several homeowners affected by the defective concrete filed a class action suit against Defendant Argos in the U.S. District Court for the Southern District of Georgia, Case Number 4:16-cv-00104-LGW-GRS.

64.

As a result, Defendant Argos, the sole bad actor, should be Ordered to indemnify and hold harmless Plaintiffs and/or its officers, shareholders, agents, successors and assigns in any future litigation arising from or the result of the defective concrete sold by Defendant Argos to Plaintiffs.

## COUNT V

## TORTIOUS INTERERENCE WITH BUSINESS RELATIONS AGAINST

## DEFENDANTS ARGOS USA CORP.; ARGOS CEMENT, LLC; ARGOS

## READY MIX, LLC

65.

Plaintiffs reallege and incorporate Paragraphs 1 through 64 above.

66.

Additionally, Defendant Argos intentional acts, as set forth in Count IV herein, wrongfully interfered with Plaintiffs business relationships.

67.

Specifically, when the defects in the concrete manifested, Defendant Argos deflected blame from itself to Plaintiff VB Construction.

68.

Moreover, Defendant Argos knew its defective concrete mix, which contained an exurbanite amount of fly ash, is the sole cause of the dusting.

69.

Notwithstanding its own bad acts, Defendant Argos purposefully, maliciously, without justification, and with intent to injure deflected blame for the concrete dusting onto VB Construction.

70.

Thus, Defendant Argos induced long-standing clients and customers to cease doing business with VB Construction.

71.

As a result, Plaintiffs lost a sum not less than $1,000,000.00 in revenue.

72.

Accordingly, Defendant Argos should be ordered to pay Plaintiffs a sum to be determined at trial for its lost revenue.

**COUNT VI**

**PUNITIVE DAMAGES AGAINST DEFENDANTS ARGOS USA CORP.;**

**ARGOS CEMENT, LLC; ARGOS READY MIX, LLC**

73.

Plaintiffs reallege and incorporate Paragraphs 1 through 72 above.

74.

Plaintiffs show Defendant Argos' actions were willful, wrongful, wonton, and with a conscious disregard for the consequences.  Accordingly, Defendant Argos should be ordered to pay Plaintiff a sum, in an amount to be determined by the enlightened consciousness of the jury, to punish Defendant Argos for its wrongful acts and to deter it from future similar acts.

75.

Finally, Plaintiffs show they have incurred substantial attorney's fees, costs, and expenses.  Accordingly, Defendants should be ordered to pay Plaintiffs' attorney's fees costs and expenses.

**WHEREFORE,** Plaintiffs pray:

(a)   that a preliminary and permanent injunction ISSUE prohibiting Defendants from engaging in selective and discriminatory pricing;

(b)     that Defendants be jointly and severely ORDERED to pay Plaintiffs a sum to be determined by the enlightened consciousness of the jury for their violations of the Sherman Act and the Clayton Act;

(c)     that Defendants be jointly and severely ORDERED to pay Plaintiffs treble damages as a result of their violations of the Sherman Act and the Clayton Act;

(d)     that Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC be ORDERED to indemnify and hold harmless Plaintiffs and/or its officers, shareholders, agents, successors and assigns in any future litigation arising from or the result of the defective concrete sold by Defendant Argos to Plaintiffs;

(e)     that Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC be ORDERED to pay Plaintiffs a sum to be determined at trial for its lost revenue;

(f)     that Defendants Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix, LLC be ORDERED to pay Plaintiffs a sufficient sum to punish them and to deter them from future similar acts;

(g)     that Defendants be ORDERED to pay Plaintiffs attorney's fees costs and

expenses; and

(h)     for such other and further relief as the Court deems just and proper under

the circumstances.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure,

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

This _____ day of October, 2016.

Respectfully submitted by:

*/s/ Lance W. Gowens*
Lance W. Gowens
Georgia Bar Number 200425
Attorney for Plaintiffs
3630 Peachtree Road, NE, Suite 1025
Atlanta, Georgia  30326
Telephone: (678) 648-7470
E-mail: lance@gowenslaw.com

*/s/ Amanda Brookhuis*
Amanda Brookhuis
Georgia Bar Number 601396
Attorney for Plaintiffs
125 E. Trinity Place, Suite 306
Decatur, Georgia 30030
Telephone: (740) 505-6006
E-mail:  amandabrookhuis@gmail.com